**SO ORDERED.**

**SIGNED this 03 day of September, 2010.**



_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **SANDRA KAYE MCMULLEN** | **09-09518-8-SWH** |
|     **DEBTOR** | |

**ORDER REGARDING APPLICABILITY
OF 11 U.S.C. §§ 521(a)(6), 521(a)(2)(C), 521(d) AND 362(h)**

The matter before the court is the debtor Sandra Kaye McMullen's motion to determine whether 11 U.S.C. §§ 521(a)(6), 521(a)(2)(C), 521(d) and 362(h) are applicable to the claim of Pentagon Federal Credit Union ("Pentagon"), secured by a 2005 Mazda, in her chapter 7 case. A hearing was held in Raleigh, North Carolina, on April 21, 2010, at which time the court gave the parties the opportunity to submit formal briefs. The debtor filed a brief, Pentagon filed a responsive brief, and, at the invitation of the court, an amicus brief was filed by another of the debtor's creditors, Coastal Federal Credit Union ("Coastal"). The debtor filed a reply brief, and the matter is now ripe for disposition.

For the reasons that follow, the court holds that section § 521(a)(6) is not applicable to the Pentagon claim in this case, but that §§ 362(h), 521(a)(2)(C), and 521(d) do apply, as discussed below.

## BACKGROUND

The facts are not in dispute. The debtor filed a petition under chapter 7 of the Bankruptcy Code on October 30, 2009. The debtor also timely filed a Chapter 7 Debtor's Individual Statement of Intention indicating that she would, by reaffirming the debt, retain a 2005 Mazda automobile on which Pentagon has a lien. Pentagon did not file a claim.

The first scheduled § 341 meeting was set for December 18, 2009, and the debtor entered into the reaffirmation agreement on December 30, 2009, thereby complying with the applicable time requirements of 11 U.S.C. §§ 521(a)(2)(A) and 362(h)(1)(B). The reaffirmation agreement stated that the debtor agreed to reaffirm the debt to Pentagon in the amount of $8,205.84, and that the original purchase price of the Mazda was $20,087.45.

The debtor's attorney did not sign the reaffirmation agreement. After the reaffirmation agreement was filed with the court, the debtor rescinded the agreement. At that time, the debtor also filed the instant motion along with a motion to delay entry of discharge and to confirm that the stay remains in effect. The debtor filed the motion to delay discharge and for continuation of the stay, which the court allowed, in order to protect her ability to enter into another reaffirmation agreement with Pentagon in the event that the court ruled that one or more of the aforementioned statutes is applicable, and to file that reaffirmation agreement prior to the entry of discharge.

**DISCUSSION**

The questions raised in this matter would most appropriately be asserted in an adversary proceeding because what the debtor seeks is, in reality, a declaratory judgment as to the applicability of these statutes. However, because no party objected and each party has, instead, fully participated through their appearance at the hearing and filing of briefs, the protections afforded by an adversary proceeding are present and the court will consider the questions raised in the context of a contested matter.

<u>The Parties' Interpretation of the Issues and Involved Statutes</u>

The issue presented arises out of the interaction between §§ 362(h)(1)(A) and (B) (when does the automatic stay terminate) and § 521(d) (when is an *ipso facto* clause enforceable), but the parties frame it somewhat differently. Because the crux of the matter comes down to subtleties in the statutory language and in the interpretation of it, it is worthwhile first to set out the issue as articulated by each of the parties. The debtor sees the question presented as follows:

> In order for the automatic stay to lift in accordance with 11 U.S.C. § 362(h)(1), is it sufficient for a chapter 7 debtor simply to fail to comply with either § 362(h)(1)(A) or § 362(h)(1)(B), or does a proper interpretation of these subsections require that a debtor must fail to comply with *both* § 362(h)(1)(A) and § 362(h)(1)(B) before the stay lifts thereunder?

Brief of Debtor at 1 (emphasis added). Pentagon construes it as follows:

> Can a consumer debtor in a [chapter 7 case] evade enforcement of an *ipso facto* clause under . . . a security agreement under § 521(d) by merely stating an intent to reaffirm debt secured by collateral under § 362(h)(1)(A) without also performing his statement under § 362(h)(1)(B)?

Creditor's Brief in Opp. at 1. And, finally, Coastal frames the issue this way:

> Following [the BAPCPA revisions to the Bankruptcy Code], does the automatic stay lift to permit a creditor to enforce an "ipso facto clause" under applicable state law

> if the debtor timely files a statement of intention to reaffirm the debt in question but fails to also timely perform that stated intention?

Amicus Curiae Mem. of Law in Response to Debtor's Mot. at 1.

Before delving further into the parties' interpretations of it, we look next to the language of the statutes themselves. Section 362(h) provides:

> (h)(1) In a case in which the debtor is an individual, *the stay provided by subsection (a) is terminated* with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate *if the debtor fails within the applicable time set by section 521(a)(2)--*
>
> > *(A) to file timely any statement of intention* required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it *and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property*, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; *and*
>
> > *(B) to take timely the action specified in such statement*, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

11 U.S.C. § 362(h)(1)(A) and (2) (emphasis added).

Section 521(d) provides:

> (d) *If the debtor fails timely to take the action specified in* subsection (a)(6) of this section, or in *paragraphs (1) and (2) of section 362(h), with respect to property* which a lessor or bailor owns and has leased, rented, or bailed to the debtor or *as to which a creditor holds a security interest* not otherwise voidable under section 522(f), 544, 545, 547, 548, or 549, *nothing in this title shall prevent or limit the operation of a provision in the underlying* lease or *agreement that has the effect of placing the debtor in default under such* lease or *agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor.* Nothing in this subsection shall be deemed to justify limiting such a provision in any other circumstance.

4

11 U.S.C. § 521(d) (emphasis added).

In summary, if the stay is lifted under § 362(h), any *ipso facto* clause contained in a secured creditor's agreement is enforceable. Attention, therefore, must be focused on the circumstances under which the stay is terminated or remains in place pursuant to § 362(h). In the context of this statutory language, if all three versions of the issue presented and the parties' discussions of it in their briefs are overlaid, the commonality proves to be this: Does the word "and" between subsections (A) and (B) mean a debtor *must comply* with both subsections (A) (file a statement indicating an intent to reaffirm and enter into the agreement) and (B) (take the action specified in the agreement) in order to *benefit* from the protection of the automatic stay, or, must the debtor *fail to comply* with both subsections in order to *lose* the protection of the automatic stay? The debtor argues the latter interpretation, and contends that a debtor may comply with both, or either, of the subsections, and still receive the benefit of the automatic stay. The creditors, in contrast, construe the statute to mean that a debtor must successfully *comply* with *both* (A) and (B) in order to *avoid* termination of the stay, such that compliance with one provision, or none, results in the stay lifting.

The debtor interprets the statute to provide that a debtor must, in essence, successfully *fail* to comply with *both* (A) and (B) in order for the automatic stay to lift. So, if the debtor complies with both (A) and (B), or with *either one*, the debtor reasons, the stay remains in place. Going further still, the debtor argues that she can satisfy the statute by filing the statement of intent even if, to the contrary, she specifically intends to refrain from taking the action specified within it, or intends merely to try to negotiate and enter into a *beneficial* reaffirmation agreement. According to the debtor,

> [i]t might be questioned why a debtor should be required to state an intention to reaffirm or redeem property, if filing of such a statement does not carry with it an

5

> obligation to actually perform the intention. Could not a debtor simply indicate an intention to reaffirm, while actually intending all-the-while to exercise a right to "ride-through"? The answer, of course, is yes, but such a possibility should not in-and-of-itself lead to an interpretation of § 362(h)(1) that is inconsistent with the plain meaning. Furthermore, it will likely always be the intention of a debtor to reaffirm a debt, provided an agreement may be negotiated which is actually beneficial to the debtor . . . . It is only if the creditor would insist on terms which are burdensome, or which are not overall beneficial to the debtor, that the debtor might change his intention and opt for a less-risky "ride-through."

Debtor's Brief at 18.

Finally, although the debtor advocates a plain reading of § 362(h) and recognition of a statutory ride-through, she also discusses, at length, the extent to which BAPCPA did or did not preclude judicial ride-through, the nature of a "proper" statement of intention, and the legislative history of § 362(h). Debtor's Brief at 8. For the reasons that follow, the court does not need to go down these analytical side roads because, in the court's view, the debtor simply misreads the plain language of the statute.

### Statutory Interpretation

BAPCPA's drafters were generous in offering to bankruptcy courts a bounty of interpretive opportunities. With § 362(h), we embark on interpretation of the statutory inverse negative. In construing a statute, the "'court should always turn first to one, cardinal canon [of construction] before all others': the plain meaning rule." Ayes v. U.S. Dept. of Veterans Affairs, 473 F.3d 104, 108 (4th Cir. 2006) (alteration in original) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992)), cert. denied, 552 U.S. 989 (2007), quoted in Coastal Federal Credit Union v. Hardiman, 398 B.R. 161, 167 (E.D.N.C. 2008). Application of the rule requires the court to consider "the context in which the statutory words are used because [courts] do not construe statutory phrases in isolation; [courts] read statutes as a whole." Hardiman, 398 B.R. at 167

(alteration in original and internal quotation omitted).  What the court cannot do, in a plain meaning analysis, is look beyond statutory language that is "unambiguous," or a statutory scheme that is "coherent and consistent."  Hardiman, 398 B.R. at 167 (quoting Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002)).  "Coherent and consistent" are not the most apt descriptors of BAPCPA's statutory scheme as a whole, but the specific statutory language before the court in this matter is, in the BAPCPA context, relatively straightforward.

The debtor maintains that the "plain meaning" of § 362(h)(1) "clearly indicates that §§ 362(h)(1) and 521(d) are *not* implicated unless the debtor fails *both* to timely file a proper statement of intention and 'to take timely the action specified[.]  11 U.S.C. §§ 362(h)(1)(A) and (B).'"  Debtor's Brief at 13 (emphasis added).  In arguing that compliance with either one of the § 362(h)(1)(A) and (B) subsections is sufficient under the statute to warrant maintenance of the stay, the debtor must mean that only the filing of a statement of intention required by subsection (A) is necessary, because compliance with (B) is impossible without first complying with (A).  This interpretation of the statute, however, is at odds with another of the most basic precepts of statutory construction: "In construing a statute, we are obliged to give effect, if possible, to every word Congress used."  Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979), quoted in In re Balbus, 933 F.2d 246, 251 (4th Cir. 1991).   This particular interpretation of the statute would enable a debtor to completely ignore subsection (B) as meaningless and thus would, impermissibly, "contradict well-established principles of statutory interpretation that require statutes to be construed in a manner that gives effect to all of their provisions."  U. S. ex rel. Eisenstein v. City of New York, 129 S. Ct. 2230, 2234 (2009) (citing cases); In re Bateman, 515 F.3d 272, 278 (4th Cir. 2008) (noting the "general rule that 'courts should disfavor interpretations of statutes that render language

7

superfluous'") (citations omitted). If, in fact, the language of § 362(h) plainly and clearly allows a debtor to choose either one of its two subsections for compliance, why would the choice of the second subsection only be impossible?

The statute says – in this sequence – that the stay terminates if the debtor fails to timely accomplish (A) *and* (B). The sequence informs the reading, much as application of the appropriate order of operations is crucial in working a mathematical equation. If this sentence were written in a numerical format, there would be brackets to indicate that subsections (A) and (B) are cumulative: No stay if no [A + B]. The statute does not say that the debtor must accomplish (A) *and/or* (B) in order for the stay to remain in place. The starting point of this statute is the presumptive termination of the stay. The termination occurs if (not "unless," but "if") the debtor does not file the statement of intention and enter the agreement, *and* take the action specified in the statement. Further, as is discussed above, the subsections must be read as [A + B], because B cannot be accomplished without A. This analysis "gives effect to the logical sequence of the language used." Bateman, 515 F.3d at 277 (internal quotations and citations omitted).

What the debtor's interpretation really does is incorporate the word "not" at the beginning of the statute, thus flipping the statute's operation. According to the debtor: "The automatic stay does NOT lift pursuant to § 362(h)(1) UNLESS the debtor BOTH fails to file timely a 'proper' statement of intention under § 362(g)(1)(A) AND fails to timely enter into a reaffirmation agreement . . . in accordance with § 362(h)(1)(B)." Debtor's Brief at 14 (capitalization added). The debtor's numerically formatted sentence would read: Stay unless no A and/or no B.

That is not what the statute says. The statute says that the stay IS terminated IF a debtor fails to file the required statement per subsection (A), AND to take the action specified in the statement

8

per subsection (B). It isn't so much the word "and" that drives the debtor's construction of the statute, but rather the debtor's conflated assumption that the stay will NOT terminate, UNLESS the debtor fails to do not one, but two things. To the contrary: the stay WILL terminate, IF the debtor fails to do not one, but two things, namely (A) and (B). Doing one or the other, but not both, is not enough. The statute says "and" because a debtor must comply with both (A) and (B), otherwise the stay is terminated. A creditor may then be entitled to enforce an *ipso facto* clause, if one is included in the contract.

The court's analysis of the statute "ceases 'if the statutory language is unambiguous and the statutory scheme is coherent and consistent.'" Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)), quoted in Hardiman, 398 B.R. at 167. The only way it is proper for the court to look outside the language of the statute itself would be if the question raised created the ambiguity necessary to warrant examination of related precedent, legislative history, and other sources commonly examined by courts. So, while the debtor goes to great lengths to explain why ride-through is not necessarily *precluded* by the statute,[1] the court has no grounds on which to even pursue that line of reasoning.

---

[1] In In re Jones, 591 F.3d 308, 311 (4th Cir. 2010), the court of appeals clearly expressed its view that "BAPCPA amended Title 11 to eliminate the ride-through option that we recognized in In re Belanger." The debtor argues that even if Belanger-style ride-through was precluded by BAPCPA, the statute does not necessarily preclude other forms of ride-through, including the statutory variant which is, according to the debtor, authorized by the plain language of § 362(h). The court disagrees with the debtor's interpretation of § 362(h) but does agree that Jones does not stand for the proposition that "judicial" or "back door" ride-through is gone for good.

The Jones court did not consider that question, but included this thought-provoking observation: "Because Mr. Jones did not take any action to reaffirm or redeem, we have no occasion to address the 'back door ride-through' option that some courts have recognized where the debtor has substantially complied with §§ 521(a)(2) and 362(h) but has been frustrated in his effort to fully comply." 591 F.3d at 312 n.3. Thus, to the extent that a ride-through door remains ajar in this circuit, the path to and potentially through that door appears to be through substantial compliance.

Accordingly, the court rests its holding on the plain language of the statute. However, the particular facts of this case warrant some further discussion of the statute as applied to the facts. As discussed above, the debtor's construction of §§ 362(h)(1)(A) and (B) makes the requirement set out in subsection (B) essentially meaningless. The debtor's construction of the statute also raises questions about the significance, if any, of the debtor's actual intent. To the extent that the debtor infers from the statute that it is permissible to file a statement of intent *without* actually having *any* present intent of taking the stated action, and *with* the present intent of taking some other, different action that will defeat the stated intent, the court disagrees. The good faith requirement inherent in all aspects of the Bankruptcy Code should preclude a debtor from filing a statement of intent to reaffirm and then entering into the reaffirmation agreement solely to further some other, and different, purpose of the debtor.

More particularly, in § 521, which outlines a debtor's duties, § 521(a)(2)(B) calls on a debtor to perform, within 30 days after the first date set for the meeting of creditors under § 341(a), his intention with respect to the property securing the debt that he has, under § 521(a)(2)(A), stated his intent to reaffirm. Whether the debtor in fact had no intent to perform the agreement she entered into is not entirely clear. She argues that a lack of intent is acceptable, but does not go so far as to profess her own lack of intent to perform the agreement with Pentagon.

To expect a debtor to undertake the duty prescribed by § 521 with the intent of seeing it through is not unreasonable and appears so self-evident, in this context, that articulation of that requirement should not be necessary. The court's reasoning does not extend so far as to limit a debtor's ability to change his mind, which is specifically countenanced by the statutory provision allowing a debtor to unilaterally rescind the agreement within sixty days of the date of its filing or

10

at any time before a discharge is entered, whichever occurs later. § 524(c)(4). The court is well aware that a debtor's circumstances may change and thus affect the debtor's decisions in connection with the bankruptcy case. That may well include the advisability of taking the action they forecast in the context of § 362(h)(1). That scenario, however, is qualitatively different from the one proposed by this debtor, which is that a debtor may "indicate an intention to reaffirm, while actually intending all-the-while to exercise a right to 'ride-through.'" Debtor's Brief at 18.

Last, the court turns to the applicability of § 521(a)(6), which presents an easier question. Section 521(a)(6) provides that an individual chapter 7 debtor may not "retain possession of personal property as to which a creditor has an allowed claim for the purchase price" unless the debtor complies with the remaining requirements of that statute. 11 U.S.C. § 521(a)(6). See In re Donald, 343 B.R. 524, 535-6 (Bankr. E.D.N.C. 2006) (holding the term "allowed" is significant and cannot be ignored).

The Donald court noted that for a claim to be "allowed," a proof of claim must be filed, which is "a reasonable prerequisite to receiving the relief afforded by § 521(a)(6)." 343 B.R. at 536. Pentagon did not file a proof of claim, from which it follows that Pentagon does not have an "allowed claim." Further, "even if a creditor does file a proof of claim and the claim is deemed allowed, the claim must be 'for the purchase price' of the personal property at issue," which the court construed to mean the "full" purchase price. 343 B.R. at 536. In this case, the debtor's indebtedness is for an amount that is less than the purchase price. Neither creditor takes serious issue with the debtor's argument that § 521(a)(6) does not apply in this case, and the court agrees with the debtor that § 521(a)(6) is inapplicable on these facts.

## CONCLUSION

For the foregoing reasons, the court concludes that § 521(a)(6) does not apply on the facts of this case, but that the remaining statutes, namely §§ 521(a)(2)(C), 521(d) and 362(h), are applicable in the context of the debtor's decision to reaffirm, redeem, or relinquish the personal property securing her debt to Pentagon. As provided in the court's order of March 12, 2010, the debtor's discharge in this case will be delayed for a period of 30 days following the date of the entry of this order, during which time the debtor may choose to file a reaffirmation agreement concerning the Pentagon debt. Also as provided in the order of March 12, 2010, the automatic stay as against Pentagon shall remain in full force and effect until the earlier of the entry of discharge of the debtor or entry of an order closing the case.

**SO ORDERED**.

**END OF DOCUMENT**